UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

AER S.,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

Defendant.

No. CV 18-8461 FFM

MEMORANDUM DECISION AND ORDER

**PROCEEDINGS IN THIS COURT**

Plaintiff seeks to overturn the decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and supplemental security income. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the Case Management Order filed on October 3, 2018, on July 8, 2019, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the administrative record (the "AR") and the Joint Stipulation. For the reasons stated below, the decision of the Commissioner is reversed and the matter remanded.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

## CONTENTIONS

Plaintiff raises three issues:

1. Whether the Administrative Law Judge ("ALJ") properly evaluated the opinion evidence;
2. Whether the ALJ properly evaluated plaintiff's subjective impairments and complaints of pain; and
3. Whether the ALJ properly determined plaintiff's residual functional capacity and his ability to perform his past relevant work.

/ / /

/ / /

## DISCUSSION

1. The Opinion Evidence

a. Dr. Hughes.

Plaintiff's treating physician, John C. Hughes, D.O., completed a form entitled, "Functional Capacity Letter" dated July 22, 2014. On that form, Dr. Hughes listed a diagnosis of "Advanced OA of hip," listed plaintiff's prognosis as poor, and noted "requires hip replacement before going back to work." (AR 367.) Dr. Hughes checked options on that form indicating that plaintiff was unable to work at that time, that plaintiff's impairments were expected to last at least 12 months, and that plaintiff would require accommodation at work because of problems stooping or bending, balance, and a need for unscheduled breaks. (AR 367.) The ALJ gave little weight to Dr. Hughes's opinions, noting:

> However, the Social Security Administration is responsible for making the determination or decision whether the claimant meets the statutory definition of disability. A statement by a medical source that the claimant is "disabled" or "unable to work" does not mean that the Social Security Administration will determine that the claimant is disabled. (20 CFR 404.1527). This issue is reserved for the Commissioner. Furthermore, the better an explanation a source provides for an opinion, the more weight the Social Security Administration will give that opinion. Here however, Dr. Hughes only checks off boxes and fails to provide a supporting explanation as to why the claimant's physical conditions impose more than minimal limitations. I give greater weight to the opinions of the consultative examiners given the supportability of their opinions.

AR 25.

Plaintiff notes that the form clearly defined the requirements of sedentary, light and medium work and argues that, because Dr. Hughes did not check any of the options corresponding to those levels of work on the form, Dr. Hughes found that plaintiff could not perform any of those requirements. Plaintiff also notes that Dr. Hughes found that plaintiff would have problems with stooping or bending, balancing, would have balancing issues, and would need to take unscheduled breaks. Plaintiff argues that these additional limitations are not findings that are reserved to the Commissioner. As to the ALJ's finding that Dr. Hughes failed to provide supporting explanation for his opinion, plaintiff argues that Dr. Hughes's opinion was provided with treatment notes.

Here, plaintiff is correct that these additional limitations are not findings that are reserved to the Commissioner. However, the ALJ also discounted Dr. Hughes's check-box opinions because he provided no supporting explanation for them. (AR 25.) This basis was a permissible reason for rejecting Dr. Hughes's opinions. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (citation omitted)); *see also Casas v. Comm'r of Soc. Sec. Admin.*, 2017 WL 2222613, at *11 (D. Ariz. May 22, 2017) (affirming rejection of nurse practitioner's opinions because they were stated in a "check-box form" containing only unsupported conclusions). Moreover, the record supports the ALJ's determination, as Dr. Hughes did not meaningfully discuss what, if any, medical evidence (i.e. lab reports or exam findings) supports the limitations he assigned to plaintiff. Rather, the conclusory opinions Dr. Hughes expressed by checking and not checking boxes in the report are entirely unsupported by any substantive information about why plaintiff is as severely limited as Dr. Hughes

opined. Further, the ALJ gave greater weight to the opinions of the consultative examiners and found those opinions were supported by the evidence. (AR 25.) Although plaintiff correctly notes that Dr. Hughes's report included treatment notes, those records consist of procedure notes for two injection treatments and notes for a single examination date: April 4, 2013. The examination notes for that date indicate that plaintiff had right hip pain and limited range of motion in abduction, flexion, and extension, and that an X-ray showed fibrotic infiltrate at the right hip joint and cartilage degeneration. (AR 366.) However, the notes also indicate that plaintiff was generally healthy with no change in strength or exercise tolerance and that plaintiff had no neurological symptoms such as weakness, tremors, or seizures. (AR 366.)

> The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Here, the Court finds that the ALJ did not err in rejecting Dr. Hughes's opinions based on the brief, conclusory and inadequately supported treatment notes attached to his report.

b. Dr. Zeegen.

Plaintiff's treating physician, Erik Zeegen, M.D., submitted two medical source statements in August 2016. (AR 716-17.) On August 10, 2016, Dr. Zeegan opined that plaintiff can lift and carry 20 pounds occasionally and frequently, can stand and walk with normal breaks for a total of six hours in an eight-hour workday, can sit continuously with normal breaks for a total of six hours in an eight-hour workday, has the unlimited ability to push and pull, and can never engage in high impact activities. (AR 717.) On August 22, 2016, Dr. Zeegan opined that plaintiff can lift and carry 10

pounds occasionally and frequently, can stand and walk with normal breaks for a total of less than two hours in an eight-hour workday, must alternate between sitting and standing, has the unlimited ability to push and pull, and can never engage in high impact activities. (AR 716.) The ALJ gave little weight to Dr. Zeegen's medical source statements:

> I give only little weight to Dr. Zeegen's medical source statements given their internal inconsistency. In August 2016, he at once opined that the claimant could perform light work and, later that month, only sedentary work. The medical record does not reflect such a drastic change in functional ability during that period. Furthermore, the physician fails to provide any explanation to his opinions. He merely checks boxes. The complete medical record corroborates that the claimant can perform a range of light work. For example, straight leg raising elicited a negative finding at 90 degrees, both sitting and supine, during a consultative examination. (Ex. 5F/4). Notably physical therapy appeared beneficial for his rehabilitation following hip surgery. (Ex. 16F).

AR 25.

As previously noted, that a physician's opinion is provided on a conclusory "check-box" form with inadequate explanation or medical support is a permissible reason for rejecting the opinion. *Thomas*, 278 F.3d at 957; *Casas*, 2017 WL 2222613, at *11 (D. Ariz. May 22, 2017). Plaintiff argues that Dr. Zeegen's opinions were not internally inconsistent because the two forms consider different conditions. Further, plaintiff argues that the August 10, 2016, form considered plaintiff's condition following his right total hip arthroplasty, and that opinion is consistent with plaintiff's testimony that his hip condition was improving after his bilateral surgeries. However,

the August 22, 2016, form was completed 12 days later and inexplicably (and inconsistently) reflects a decline in plaintiff's condition, not an improvement. (AR 716-17.) Although plaintiff argues that the August 22, 2016, form sought to determine plaintiff's functional ability prior to the hip replacement, the form evidences no such intent. (AR 716.)

Plaintiff also argues that the medical record does not corroborate the ALJ's statement that plaintiff can perform a range of light work. The ALJ noted that, during a September 19, 2014, complete internal medicine evaluation by Babak Tashakkor, M.D., straight leg raising elicited a negative finding at 90 degrees, both sitting and supine, during a consultative examination. (AR 25, 386.) Plaintiff argues that the ALJ's one example did not reflect the "complete medical evidence." However, as defendant notes, the ALJ's opinion doesn't merely rely on a single example. Instead, the ALJ's entire decision references four different examining and non-examining doctors' opinions from different dates throughout the relevant time period, all of which confirmed that plaintiff could perform a range of light work. (AR 20-26, 119-20 (January 22, 2015, opinion of A. Resnik, M.D.), 388 (September 19, 2014, opinion of Babak Tashakkor, M.D.), 717 (August 10, 2016, opinion of Erik Zeegen, M.D.), 911 (December 6, 2016, opinion of H. Harlan Bleecker, M.D.). Therefore, remand is not warranted on this issue.

2. <u>Plaintiff's Credibility</u>.

Next, plaintiff argues that the ALJ failed to articulate a sufficient rationale to reject plaintiff's pain testimony. As to plaintiff's credibility, the ALJ found:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to

> cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 25-26.

Specifically, the ALJ articulated three reasons for discounting plaintiff's testimony: a) the medical evidence is inconsistent with or does not support the alleged severity of plaintiff's alleged symptoms; b) plaintiff's daily activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitation; and c) plaintiff's medical improvement is not consistent with his subjective complaints. (AR 25-26.)

a. Medical evidence.

Plaintiff makes no argument regarding the ALJ's finding that the medical evidence does not support plaintiff's symptom testimony. Plaintiff's argument on this point is limited to the assertion that this factor cannot be legally sufficient by itself to discount plaintiff's testimony. The Court agrees that an ALJ may not premise the rejection of the claimant's testimony regarding subjective symptoms solely on the lack of medical support (*Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). However, weak objective support does undermine subjective complaints of disabling symptoms. *See Tidwell v. Apfel*, 161 F.3d 599, 601-02 (9th Cir. 1998); *see also Regennitter v. Commissioner of Soc. Sec. Admin*., 166 F.3d 1294, 1297 (9th Cir. 1999) (finding that subjective complaint is "inconsistent with clinical observations" can constitute clear and convincing reason for rejecting testimony if supported by specific findings).

b. Daily activities.

Next, the ALJ discounted plaintiff's testimony based on plaintiff's daily activities:

> Despite such allegations of disabling symptoms and limitations, the claimant described that he drove a car and could perform light housekeeping chores, such as dusting and cooking, without assistance. (Ex. 3E/3). Thus the claimant engages in activities that are not limited to the extent one would expect, given his complaints of disabling symptoms and limitation.

AR 25-26.

However, the ALJ failed to articulate how any of the daily activities are transferable to work, how long plaintiff could perform the activities, or how the activities were inconsistent with Plaintiff's claimed limitations. The Ninth Circuit has:

> repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Garrison*, 759 F.3d at 1016; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Therefore, the ALJ's recitation of plaintiff's light household activities was not a legitimate basis for discounting plaintiff's testimony.

/ / /

c. Improvement with Treatment.

Finally, the ALJ discounted plaintiff's pain testimony because plaintiff's condition improved with treatment:

> Although the claimant endured a hypertensive emergency in January 2016 and bilateral hip replacement later that year, the medical record overall traced medical improvement with physical therapy and medication management. (Ex. 21F). Particularly, in June 2016, a physical therapy evaluation revealed his overall rehabilitation potential as good. (Ex. 16F/1-2). By December 2016, Dr. Bleecker witnessed his normal gait. (Ex. 23F/9). Therefore, the claimant can work within the parameters set forth above.

AR 26. Plaintiff argues that this is not a valid basis for discounting his testimony because he testified that he was improving over time and amended his application to a closed period to April 2017. However, treatment notes indicate significant improvement prior to April 2017. As the ALJ noted, a physical therapy evaluation revealed good rehabilitation potential and listed current work status as, "Modified duty." AR 695-96.) By December 6, 2016, Dr. Bleecker opined that plaintiff had improved to such an extent that he could engage in activities consistent with a range of light work. (AR 911.) Plaintiff's testimony that he was completely disabled until April 2017 is inconsistent with this noted improvement. Plaintiff argues that this improvement does not reflect his abilities prior to the surgeries and improvement. However, the issue is not whether improvement in 2016 is inconsistent with disability in 2013. The significant improvement in 2016 is inconsistent with plaintiff's testimony that he was unable to work until April 2017. Therefore, the ALJ properly considered this inconsistency in discounting plaintiff's testimony. The ALJ properly considered

the failure of the medical record to support plaintiff's testimony in light of the ALJ's reliance on this additional factor as well. Therefore, remand is not warranted on this issue.

3. Ability to Perform Past Relevant Work.

Finally, plaintiff argues that the ALJ erred in finding that he was able to perform his past relevant work. The ALJ made the following findings as to plaintiff's past relevant work:

> The claimant has the following past relevant work history as per the Dictionary of Occupational Titles (DOT):
>
> (1) Real Estate Broker (DOT 250.357-921), which is considered light, skilled work with a Specific Vocational Preparation (SVP) of five. The claimant actually performed this job at the heavy exertional level.
>
> At both hearings, a discussion took place regarding his past relevant work. At the September 2016 hearing, the claimant testified that his work as a real estate broker included property management duties. He detailed that he dealt with student housing; consequently, he repaired houses, moved furniture, and lifted as much as 100 pounds. (September 2016 Hearing Testimony & Ex. 12E/3). The claimant's representative, Ms. Lowenstein, posited that his work constituted a combination job with a higher demand of exertion. (Ex. 12E/3). However, I disagree. Rather, I find that his Real Estate Broker position represented a stand-alone job, *i.e.* he performed typical real estate broker duties *for at least 40 hours a week.* (*See* September 2016 Hearing Testimony). I do not assess a separate

janitor job for his performance of extra repairs due to insufficient information regarding the number of hours, frequency, or salary.

AR 26 (emphasis added).

The vocational expert ("VE") at the August 23, 2016, hearing initially categorized plaintiff's past work as real estate broker. (AR 61.) Plaintiff was then examined further and testified that a portion of his day was spent doing repair work. (AR 63.) Plaintiff testified that, "If [I] were working eight to ten hours that day it would be an hour or two." (AR 63.) The VE then testified, "I mean I guess there's enough there to classify it as a combination job." (AR 63.) The ALJ testified that the other part of the combination job would be a janitor, a medium, semi-skilled job, actually performed as heavy. (AR 68.) The ALJ testified that the combination job would then be classified as medium and that a hypothetical person with plaintiff's lifting restrictions could not perform the combination job. (AR 69-70.) However, the ALJ then examined plaintiff again and plaintiff testified as follows:

ALJ: Okay. Sir, how many hours a day did you usually work at that job?

CLMT: Four to fourteen probably.

ALJ: What was the average?

CLMT: Ten, eight. Ten. If you ask my family, it was way too much.

AR 70.

The ALJ then re-examined the VE:

ALJ: If you worked an average of ten hours a day, and you had to do that other business, one to two hours, do you still think it was a combo job?

VE: Well I mean at that point you have eight hours a day of being real estate broker.

ALJ: Right.

VE: You know, so it seems like, it can stand alone at that point.

AR 70.

At the June 27, 2017, hearing, the following exchange occurred regarding the classification of plaintiff's past relevant work:

ALJ: Counsel, do you have questions of the claimant?

ATTY: Nothing that hasn't been discussed in our last hearing.

ALJ: Okay. One sec. Okay. Ms. Hetrick, let me tell you, at the last hearing the following was identified as past relevant, real estate broker, light, five, 250.357-921, performed heavy.

ATTY: Your honor, the prior vocational expert noted it was a combination job.

ALJ: I have that. Well I have real, I think you talked about the fact that the, there's also a combo that I have listed, real estate broker and janitor, medium, five, 382.664-010, performed heavy. However, he did do the broker part when he talked about the number of hours of week, of hours, *at least 40 hours a week* from the – I can go listen to the tape. But this is my recollection. That's what's indicated. So, I have both the broker plus the combination. And real estate broker would be light, as usually performed. So, what I'm working on Ms. Hetrick is one, a real estate broker, light, five, 250.357-921, light, five, performed heavy. Also, a comb possibility, real estate broker and janitor, medium, five, 382.664-010, performed heavy. . . .

ALJ: Okay. All right. Thanks very much. And so, if there's nothing else in terms of claimant's testimony, I'm just going to give another hypothetical. Okay, counsel?

ATTY: Well I think that the information about the combination broker and broker [*sic*] need to be developed a little bit more because he --

ALJ: That's all right. We developed that in detail at the last hearing.

ATTY: I believe that the way that the claimant described it was not that the broker itself was a full-time job.

ALJ: He worked, he worked, he did his, I think he – I don't, I'm remembering the case now and I have it in the notes actually. But I think he – anyway *that's already developed as far as I'm developing it*. I mean we have, *we have the testimony in detail about the broker situation, how many hours a week he worked*. I think it was some astronomical number. But –

ATTY: Well from my recollection of the testimony, he said that he worked, at somedays [*sic*] it was 12 hours a day or more, but that it wasn't every day like that. So, the days that he may have worked eight hours doing just the broker part of it was not necessarily every day.

ALJ: That's okay. I've already taken the testimony, counsel. And anyway, real estate broker is, it says, he performed it and as its [*sic*] generally performed. But I have the, *I have the detailed testimony on the tape and in my notes*. We don't need to go through that again.

AR 83-86 (emphasis added).

The ALJ ultimately found that plaintiff could perform his past relevant work as generally performed in the national economy. (AR 27.)

Plaintiff argues that the ALJ's interpretation - that plaintiff performed the real estate broker duties for at least 40 hours per week - was not plaintiff's testimony of how he performed the job. Plaintiff testified that he worked as little as 4 hours per day

and as many as 14. (AR 70.) He testified that he spent one to two hours per day dealing with property maintenance. (AR 67.) When asked to clarify the average total hours per day he worked, plaintiff stated, "Ten, eight. Ten." (AR 70.)

Plaintiff notes that, when his attorney attempted to further develop the record on this issue at the second hearing, the ALJ precluded him from doing so. (AR 85-86.) Plaintiff had testified at the first hearing that, if working 8 to 10 hours a day, between 1 and 2 hours of that time was spent doing the janitor job. Plaintiff further testified that the total number of hours per day he worked varied and ranged between 4 and 14. (AR 63, 70.) When the ALJ pressed plaintiff as to *the average number of total hours per day he worked*, plaintiff responded "[t]en, eight. Ten."' (AR 70.) The ALJ concluded that plaintiff worked at least 40 hours per week as broker. However, the evidence does not support this conclusion. The Court finds that evidence was lacking as to whether plaintiff worked at least 40 hours per week performing the duties of the real estate broker job alone. Moreover, the ALJ did not have to speculate as to this issue, as plaintiff's counsel attempted to elicit testimony that might have filled in the gaps from the prior hearing. Instead of allowing the additional testimony, the ALJ stated that the record already contained "testimony in detail about the broker situation, how many hours he worked." (AR 85.) The ALJ then prevented plaintiff from offering any additional evidence on the subject. The problem was, however, that the "detailed testimony" was anything but as to the critical issue - whether plaintiff worked at least 40 hours per week as a real estate broker. Therefore, the ALJ erred in preventing plaintiff from properly developing the record. Indeed, where the record is unclear, the AJL has a duty to develop it further. *See, e.g.*, *Brinegar*, 337 Fed. Appx. 711; *Mayes*, 276 F.3d at 459-60.

/ / /

4. The ALJ's Error Is Not Harmless.

"[H]armless error principles apply in the Social Security . . . context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's error is harmless when it is "clear from the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1055-56); *accord Molina*, 674 F.3d at 1115 (citations omitted); *see also Carmickle,* 533 F.3d at 1162 (opining that the relevant inquiry when determining if an error is harmless is "whether the ALJ's decision remains legally valid"). Courts must be "cautious about when harmless error should be found." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

Here, the VE testified at the first hearing that, assuming plaintiff worked 8 hours per day doing the real estate broker duties, that job could stand on its own. (AR 70.) However, the VE testified that, if plaintiff's past relevant work is considered a combination job of real estate broker/janitor, plaintiff could not perform his past relevant work. (AR 70.) If plaintiff could not perform his past relevant work, the ALJ would have been required to proceed to the fifth step in the sequential evaluation process. At that step the ALJ would have to determine if plaintiff could perform any other work existing in the economy. Because the analysis was possibly cut short at the fourth step, the error was not harmless. Therefore, the Court finds that remand is warranted on this issue.

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

DATED: March 13, 2020

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge